Evan J. Smith
BRODSKY & SMITH
240 Mineola Boulevard
First Floor
Mineola, NY 11501
Telephone:     516.741.4977
Facsimile:      516.741.0626
esmith@brodskysmith.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MICHAEL WIN,<br><br>          Plaintiff,<br><br>    vs.<br><br>PERFICIENT, INC., JEFFREY S. DAVIS, ROMIL BAHL, TOM HOGAN, JILL A. JONES, DAVID LUNDEEN, BRIAN L. MATTHEWS, NANCY PECHLOFF, and GARY WIMBERLY,<br><br>          Defendants. | Case No.:<br><br>**Complaint For:**<br><br>(1)  Violation of § 14 (a) of the Securities Exchange Act of 1934<br>(2)  Violation of § 20(a) of the Securities Exchange Act of 1934<br><br><u>**JURY TRIAL DEMANDED**</u> |

Plaintiff, Michael Win ("Plaintiff"), by and through his attorneys, alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

<u>**SUMMARY OF THE ACTION**</u>

1.      Plaintiff brings this stockholder action against Perficient, Inc. ("Perficient" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants," and collectively with the Company, the "Defendants"), for violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of Defendants' efforts to sell the Company to Plano HoldCo, Inc., ("Parent") through merger vehicle Plano BidCo, Inc.

- 1 -

("Merger Sub") as a result of an unfair process, and to enjoin an upcoming stockholder vote on a proposed all cash transaction (the "Proposed Transaction"). Parent and Merger Sub are affiliates of BPEA Private Equity Fund VIII (together with Parent and Merger Sub, "EQT Asia").

2.    The terms of the Proposed Transaction were memorialized in a May 6, 2024, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the Definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, Perficient stockholders will receive $76.00 per share in cash for each share of common stock owned as of the closing of the transaction.

3.    Thereafter, on June 11, 2024, the Company filed its Preliminary Proxy Statement on Schedule PREM 14A (the "Proxy Statement") with the United States Securities and Exchange Commission (the "SEC").

4.    The Proposed Transaction is unfair for a number of reasons. Significantly, it appears as though the Board has entered into the Proposed Transaction to procure for themselves and senior management of the Company significant and immediate benefits. For example: (a) Company insiders own restricted stock units ("RSU") and performance stock units ("PSU"), all of which are subject to accelerated vesting and conversion into merger consideration; and (b) certain Company executives are entitled to severance packages, often referred to as "golden parachute" packages, entitling same to millions of dollars not shared by Plaintiff and other Company common stockholders.

5.    The Proxy Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed and rational decision of whether to vote in favor of the Proposed Transaction, and is thus in violation of the Exchange Act.  As detailed below, the Proxy Statement omits and/or misrepresents material information concerning, among other things: (a)

the sales process and in particular certain conflicts of interest for management; (b) the financial projections for Perficient, provided by the Company to the Company's financial advisors, BofA Securities, Inc. ("BofA Securities") and Wells Fargo Securities, LLC ("Wells Fargo"); and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinions created by BofA Securities and Wells Fargo, and provided to the Board.

6.       Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff. This action seeks to enjoin the Proposed Transaction.

## **PARTIES**

7.       Plaintiff is a citizen of Missouri and, at all times relevant hereto, has been a Perficient stockholder.

8.       Defendant Perficient provides digital consultancy services and solutions in the United States and internationally. Perficient is incorporated under the laws of the State of Delaware and has its principal place of business at 555 Maryville University Drive, Suite 600, Saint Louis, MO 63141. Shares of Perficient common stock are traded on the NASDAQ Stock Exchange under the symbol "PRFT."

9.       Defendant Jeffrey S. Davis ("Davis") has been the Chairman of the Board of Directors of the Company at all relevant times.

10.       Defendant Romil Bahl ("Bahl") has been a director of the Company at all relevant times.

11.       Defendant Tom Hogan ("Hogan") has been a director of the Company at all relevant times. In addition, Defendant Hogan serves as the Company's Chief Executive Officer ("CEO").

12.     Defendant Jill A. Jones ("Jones") has been a director of the Company at all relevant times.

13.     Defendant David Lundeen ("Lundeen") has been a director of the Company at all relevant times.

14.     Defendant Brian L. Matthews ("Matthews") has been a director of the Company at all relevant times.

15.     Defendant Nancy Pechloff ("Pechloff") has been a director of the Company at all relevant times.

16.     Defendant Gary Wimberly ("Wimberly") has been a director of the Company at all relevant times.

17.     Defendants identified in ¶¶ 9-16 are collectively referred to as the "Individual Defendants."

18.     Non-Party Parent is an affiliate of BPEA Private Equity Fund VIII.

19.     Non-Party Merger Sub is a wholly owned subsidiary of Parent created to effectuate the Proposed Transaction.

## JURISDICTION AND VENUE

20.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.  The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

21.     Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District or is an individual who is either present

in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

22.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District; for example, the Company's stock trades on the NYSE which is headquartered in this District.

## SUBSTANTIVE ALLEGATIONS

*Company Background*

23.     Defendant Perficient provides digital consultancy services and solutions in the United States and internationally. It offers strategy and transformation solutions in digital strategy, technology strategy, business velocity and growth, and organizational change management; and data and intelligence solutions in the areas of analytics, artificial intelligence and machine learning, big data, business intelligence, and custom product portfolios.

*The Flawed Sales Process*

24.     As detailed in the Proxy Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants and was designed to effectuate a sale of the Company to EQT Asia.

25.     Mover, the Proxy Statement fails to provide any explanation as to Company's reason for hiring two financial advisors to create fairness opinions in relation to the Proposed Transaction at a cost to the Company of roughly $34,000,000 total.

26.     In addition, the Proxy Statement is silent as to the nature of the confidentiality agreement entered into between the Company and EQT Asia and whether this agreement differed

from any other agreement with potentially interested third parties discussed and/or not specifically mentioned by the Proxy Statement, if so in all specific manners, including all specific terms of any such included "don't-ask, don't-waive" provisions or standstill provisions contained therein, including, all specific conditions, if any, under which such provisions would fall away.

27.    Moreover, the Proxy Statement fails to adequately disclose the totality of communications regarding post-transaction employment during the negotiation of the underlying transaction.

28.    It is not surprising, given this background to the overall sales process, that it was conducted in an inappropriate and misleading manner.

***The Proposed Transaction***

29.    On May 5, 2024, Perficient and EQT Asia issued a joint press release announcing the Proposed Transaction. The press release stated, in relevant part:

> **ST. LOUIS, May 5, 2024** – **Perficient, Inc.** (Nasdaq: PRFT) ("Perficient" or "the Company"), a leading global digital consultancy transforming the world's largest enterprises and biggest brands, today announced that it has entered into a definitive agreement to be acquired by an affiliate of BPEA Private Equity Fund VIII ("EQT Asia"), part of EQT AB, a purpose-driven global investment organization, in an all-cash transaction that values Perficient at an enterprise value of approximately $3.0 billion.
>
> Under the terms of the agreement, Perficient stockholders will receive $76.00 per share in cash for each share of common stock owned as of the closing of the transaction. The purchase price represents a 75% premium to Perficient's closing stock price on April 29, 2024, the last unaffected trading day prior to the transaction announcement, and a 51% premium to the Company's 30-day volume-weighted average share price for the period ending April 29, 2024.
>
> "Today's announcement is the result of a comprehensive review by the Board to maximize value for the company and its shareholders," said Jeffrey Davis, Chairman of the Board of Perficient. "We are proud of the role Perficient plays in delivering big thinking and innovative ideas, along with a practical approach to help the world's largest enterprises and biggest brands succeed. With this agreement with EQT, we will provide our shareholders with compelling, certain cash value for their shares while continuing to support our clients in exceeding expectations, outpacing the competition, and growing their businesses."

"Today marks a momentous next step for our company," said Tom Hogan, President and CEO of Perficient. "This is an exciting new chapter that would not have been possible without our employees' hard work and dedication to our clients, partners, and other stakeholders. EQT's vision for Perficient aligns directly with ours, and I look forward to partnering with them as we continue on our global growth journey."

Hari Gopalakrishnan, Partner within the EQT Private Capital Asia advisory team said, "Perficient is well known for its world class end-to-end digital consulting capabilities, and unmatched global delivery. In recent years, the Perficient team has been successful in expanding the scope of their offerings, and we look forward to supporting them in driving further growth. We have significant experience investing in the digital technology space, and I am confident that this exciting partnership will help strengthen Perficient's unique position in the marketplace."

**Transaction Details**

The transaction, which has been unanimously approved by Perficient's Board of Directors, is expected to close by the end of 2024, subject to customary closing conditions, including approval by Perficient stockholders and receipt of regulatory approvals. The transaction is not subject to a financing condition.

Upon completion of the transaction Perficient's shares will no longer trade on the NASDAQ, and Perficient will become a private company. In addition, Perficient's headquarters will remain in St. Louis, Tom Hogan will continue as CEO, and the current management team will continue to lead Perficient.

***Potential Conflicts of Interest***

30.     The breakdown of the benefits of the deal indicates that Perficient insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of Perficient.

31.     In addition, Company insiders currently own company RSUs and PSUs, all of which will be subject to accelerated vesting upon the consummation of the Proposed Transaction, and converted into the Merger Consideration not shared with public Company stockholders such as Plaintiff upon the consummation of the Proposed Transaction as follows:

| Name | Value of Company Restricted Shares ($) | Value of Company PSUs ($) | Total ($) |
|---|---|---|---|
| Thomas J. Hogan | 9,751,332 | 823,992 | 10,575,324 |
| Paul E. Martin | 5,432,100 | — | 5,432,100 |
| Jeffrey S. Davis | 6,155,848 | — | 6,155,848 |
| Susan L. Adomite | 663,480 | — | 663,480 |
| Kevin T. Sheen | 1,192,592 | — | 1,192,592 |

32.     In addition, employment agreements with certain Perficient executives entitle such executives to severance packages should their employment be terminated under certain circumstances. These 'golden parachute' packages are significant and will grant each director or officer entitled to them millions of dollars, compensation not shared by Plaintiff. The golden parachute compensation is as follows:

| Name | Cash ($) (1) | Equity ($) (2) | Perquisites/ Benefits ($) (3) | Total ($) |
|---|---|---|---|---|
| Thomas J. Hogan | 2,100,000 | 10,575,324 | 146,364 | 12,821,688 |
| Paul E. Martin | 460,000 | 5,432,100 | 146,364 | 6,038,464 |
| Jeffrey S. Davis | — | 6,155,848 | — | 6,155,848 |
| Susan L. Adomite | 136,154 | 663,480 | — | 799,634 |
| Kevin T. Sheen | 443,077 | 1,192,592 | — | 1,635,669 |

| Name | Severance Payment ($) | Prorated Target Annual Bonus Payment ($) |
|---|---|---|
| Thomas J. Hogan | 1,200,000 | 900,000 |
| Paul E. Martin | 460,000 | — |
| Jeffrey S. Davis | — | — |
| Susan L. Adomite | 136,154 | — |
| Kevin T. Sheen | 443,077 | — |

33.     The Proxy Statement also fails to adequately disclose the totality of communications regarding post-transaction employment during the negotiation of the underlying transaction. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders.

34.     This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

35.     Thus, while the Proposed Transaction is not in the best interests of Perficient, Plaintiff or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

***The Materially Misleading and/or Incomplete Proxy Statement***

36.     The Perficient Board caused to be filed with the SEC a materially misleading and incomplete Proxy Statement that, in violation the Exchange Act, failed to provide Plaintiff in his capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*<u>Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction</u>*

37.     The Proxy Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction. In particular, the Proxy Statement fails to disclose:

      a.   Adequate explanation as to Company's reason for hiring two financial advisors to create fairness opinions in relation to the Proposed Transaction at a cost to the Company of roughly $34,000,000 total;

      b.   Whether the confidentiality agreements entered into by the Company with EQT Asia differed from any other unnamed confidentiality agreement entered into

between the Company and potentially interested third parties (if any), and if so, in all specific manners;

c. All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties throughout the sales process, including EQT Asia, would fall away; and

d. The totality of communications regarding post-transaction employment during the negotiation of the underlying transaction.

38.     This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of Plaintiff and Company stockholders.

*Omissions and/or Material Misrepresentations Concerning Perficient's Financial Projections*

39.     The Proxy Statement fails to provide material information concerning financial projections for Perficient provided by Perficient management to the Board, BofA Securities, and Wells Fargo and relied upon by BofA Securities and Wells Fargo in their analyses. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading.

40.     Notably the Proxy Statement reveals that as part of its analyses, BofA Securities reviewed, "reviewed certain internal financial and operating information with respect to the business, operations and prospects of Perficient furnished to or discussed with BofA Securities by the management of Perficient, including certain financial forecasts relating to Perficient prepared

by the senior management of Perficient at the direction of the Board and approved by the Board for use by BofA Securities."

41.   Moreover, the Proxy Statement reveals that as part of its analyses, BofA Securities reviewed, "reviewed certain internal financial analyses and forecasts for Perficient (referred to in this summary of Wells Fargo's opinion as the 'Projections.'"

42.   Therefore, the Proxy Statement should have, but fails to provide, certain information in the projections that Perficient management provided to the Board, BofA Securities, and Wells Fargo. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount rates or [] market multiples.  What they cannot hope to do is replicate management's inside view of the company's prospects."  *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

43.   With regard to the *Certain Unaudited Prospective Financial Information* provided by Perficient Management, the Proxy Statement fails to disclose material line items:

    a.   Regarding the *Base Case Projections*, disclose:

        i.   Revenue, including all underlying inputs, metrics, and assumptions used to calculate same;

        ii.   Adjusted EBITDA, including all underlying inputs, metrics, and assumptions used to calculate same; and

        iii.   Unlevered Free Cash Flow, including all underlying inputs, metrics, and assumptions used to calculate same.

    b.   Regarding the *Acquisitions Projections*, disclose:

        i.   Revenue, including all underlying inputs, metrics, and assumptions used to calculate same;

        ii.   Adjusted EBITDA, including all underlying inputs, metrics, and assumptions used to calculate same; and

        iii.   Levered Free Cash Flow, including all underlying inputs, metrics, and assumptions used to calculate same.

44.    The Proxy Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

45.    This information is necessary to provide Plaintiff in his capacity as a Company stockholder with a complete and accurate picture of the sales process and its fairness. Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

46.    Without accurate projection data presented in the Proxy Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of the BofA Securities and Wells Fargo financial analyses or make an informed decision whether to vote in favor of the Proposed Transaction. As such, the Board has violated the Exchange Act by failing to include such information in the Proxy Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by BofA Securities*

47.    In the Proxy Statement, BofA Securities describes its fairness opinion and the various valuation analyses performed to render such opinion. However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for,

underlying assumptions. Without this information, one cannot replicate the analyses, confirm the valuations, or evaluate the fairness opinions.

48. With respect to the *Selected Publicly Traded Companies Analysis*, the Proxy Statement fails to disclose:

      a. The underlying metrics observed for each of the selected publicly traded companies analyzed;

      b. The underlying inputs, metrics, and assumptions used to determine the P/2024E Adj. EPS multiple for each of the selected Digital Engineering Companies utilized;

      c. The underlying inputs, metrics, and assumptions used to determine the P/2024E Adj. EPS multiple for each of the selected Diversified IT Services Companies utilized;

      d. The underlying inputs, metrics, and assumptions used to determine the P/2024E Adj. EPS multiples range of 13.0x to 17.0x utilized;

      e. The underlying inputs, metrics, and assumptions used to determine the P/2025E Adj. EPS multiples range of 12.5x to 15.5x utilized;

      f. The underlying inputs, metrics, and assumptions used to determine the 2024 Adjusted EBITDA multiples range of 10.0x to 12.5x utilized; and

      g. The underlying inputs, metrics, and assumptions used to determine the 2025 Adjusted EBITDA multiples range of 8.0x to 10.5x.

49. With respect to the *Selected Precedent Transactions Analysis*, the Proxy Statement fails to disclose:

      a. The aggregate value of each selected transaction;

b.   The date which each selected precedent transaction closed;

c.   The underlying inputs, metrics, and assumptions used to determine the LTM Adjusted EBITDA multiples range of 13.0x to 16.5x utilized; and

d.   The underlying inputs, metrics, and assumptions used to determine the NTM Adjusted EBITDA multiples range of 12.0x to 15.0x utilized.

50.   Regarding the *Discounted Cash Flow Analysis*, disclose:

a.   The underlying inputs, metrics, and assumptions used to determine the perpetuity growth rates of 3.50% to 4.50% utilized;

b.   The underlying inputs, metrics, and assumptions used to determine discount rate range of 10.50% to 12.50% utilized;

c.   The underlying inputs, metrics, and assumptions used to determine Perficient's weighted average cost of capital utilized; and

d.   The terminal value for Perficient, calculated.

51.   These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

52.   Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the Proposed Transaction truly maximizes his value and serves his interest as a stockholder. Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public Perficient stockholder. As such, the Board has violated the Exchange Act by failing to include such information in the Proxy Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Wells Fargo*

53.    In the Proxy Statement, Wells Fargo describes its fairness opinion and the various valuation analyses performed to render such opinion. However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions. Without this information, one cannot replicate the analyses, confirm the valuations, or evaluate the fairness opinions.

54.    With respect to the *Selected Public Companies Analysis*, the Proxy Statement fails to disclose:

a.   The enterprise value ("EV") for each of the selected public companies utilized;

b.   The underlying inputs, metrics, and assumptions used to determine the EV/ 2024E Adj. EBITDA multiple for each of the selected public companies utilized;

c.   The underlying inputs, metrics, and assumptions used to determine the EV/ 202EP Adj. EBITDA multiple for each of the selected public companies utilized;

d.   The underlying inputs, metrics, and assumptions used to determine the Share Price/ 2024E Adj. EPS multiple for each of the selected public companies utilized;

e.   The underlying inputs, metrics, and assumptions used to determine the Share Price/ 2025P Adj. EPS multiple for each of the selected public companies utilized;

f.  The underlying inputs, metrics, and assumptions used to determine the 2024E Adj. EBITDA multiples range of 9.0x to 12.0x utilized;

g.  The underlying inputs, metrics, and assumptions used to determine the 2025P Adj. EBITDA multiples range of 8.0x to 11.0x utilized

h.  The underlying inputs, metrics, and assumptions used to determine the 2024E Adj. EPS multiples range of 10.5x to 16.5x utilized; and

i.  The underlying inputs, metrics, and assumptions used to determine the 20259 Adj. EPS multiples range of 9.5x to 15.0x utilized.

55.  With respect to the *Selected Transactions Analysis*, the Proxy Statement fails to disclose:

a.  The aggregate value of each selected transaction;

b.  The date which each selected transaction closed;

c.  The underlying inputs, metrics, and assumptions used to determine the EV/LTM Adjusted EBITDA multiples for each of the selected transactions utilized; and

d.  The underlying inputs, metrics, and assumptions used to determine the EV/LTM Adjusted EBITDA multiples range of 13.0x to 16.0x utilized.

56.  Regarding the *Discounted Cash Flow Analysis*, disclose:

a.  The underlying inputs, metrics, and assumptions used to determine the perpetuity growth rates of 3.50% to 4.50% utilized;

b.  The underlying inputs, metrics, and assumptions used to determine discount rate range of 10.50% to 12.50% utilized; and

c.  Perficient's weighted average cost of capital.

57.    These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

58.    Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the Proposed Transaction truly maximizes his value and serves his interest as a stockholder. Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public Perficient stockholder. As such, the Board has violated the Exchange Act by failing to include such information in the Proxy Statement.

## FIRST COUNT

### Violations of Section 14(a) of the Exchange Act

### (Against All Defendants)

59.    Plaintiff repeats all previous allegations as if set forth in full herein.

60.    Defendants have disseminated the Proxy Statement with the intention of soliciting stockholders, including Plaintiff, to vote in favor of the Proposed Transaction.

61.    Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction. Specifically, Section 14(a) provides that:

It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent

or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

62.     As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

63.     The Proxy Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above. Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Proxy Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

64.     The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

65.     The Individual Defendants were at least negligent in filing a Proxy Statement that was materially misleading and/or omitted material facts necessary to make the Proxy Statement not misleading.

66.     The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to vote his shares in

favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

**SECOND COUNT**

**Violations of Section 20(a) of the Exchange Act**

**<u>(Against all Individual Defendants)</u>**

67.     Plaintiff repeats all previous allegations as if set forth in full herein.

68.     The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants knew or should have known that the Proxy Statement was materially misleading to Plaintiff in his capacity as a Company stockholder.

69.     The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein.  The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Proxy Statement; and nevertheless, approved, ratified and/or failed to correct those statements, in violation of federal securities laws. The Individual Defendants were able to, and did, control the contents of the Proxy Statement. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Proxy Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

70.     The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Perficient's business, the information contained in its filings with the SEC, and its public statements. Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Proxy Statement was misleading.  As a result, the Individual Defendants are responsible for the accuracy of the Proxy Statement and are therefore responsible and liable for the misrepresentations contained herein.

71.     The Individual Defendants acted as controlling persons of Perficient within the meaning of Section 20(a) of the Exchange Act.  By reason of their position with the Company, the Individual Defendants had the power and authority to cause Perficient to engage in the wrongful conduct complained of herein. The Individual Defendants controlled Perficient and all of its employees.  As alleged above, Perficient is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9. By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against the Defendants, as follows:

A.     Enjoining the Proposed Transaction;

B.     In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.     Directing the Individual Defendants to exercise their fiduciary duties to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein

not misleading;

D.      Awarding Plaintiff the costs of this action, including reasonable allowance for

Plaintiff's attorneys' and experts' fees; and

E.      Granting such other and further relief as this Court may deem just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff hereby demands a jury on all issues which can be heard by a jury.


Dated: June 20, 2024                            **BRODSKY & SMITH**

By: *Evan J. Smith*
                                                Evan J. Smith
                                                240 Mineola Boulevard
                                                Mineola, NY  11501
                                                Phone:  (516) 741-4977
                                                Facsimile (561) 741-0626

                                                *Counsel for Plaintiff*